IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY GLENN, PASTOR LEVON YUILLE, PASTOR RENE B. OUELLETTER, PASTOR JAMES COMBS, | &#124; | Case No.  2:10-cv-10429-TLL-CEB |
| | &#124; | |
| Plaintiffs | &#124; | THOMAS L. LUDINGTON United States District Judge |
| | &#124; | |
| v. | &#124; | CHARLES E. BINDER Magistrate Judge |
| | &#124; | |
| ERIC HOLDER, Jr., in his official capacity as Attorney General of the United States, | &#124; | |
| | &#124; | |
| Defendant | &#124; | |

**DEFENDANT'S MOTION TO DISMISS AND
BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY GLENN, PASTOR LEVON YUILLE,   |
PASTOR RENE B. OUELLETTER, PASTOR   |   Case No.  2:10-cv-10429-TLL-CEB
JAMES COMBS,   |
   |
   |   THOMAS L. LUDINGTON
   |   United States District Judge
   Plaintiffs   |
   |
v.   |   CHARLES E. BINDER
   |   Magistrate Judge
ERIC HOLDER, Jr., in his official capacity as   |
Attorney General of the United States,   |
   |   DEFENDANT'S MOTION
   |   TO DISMISS
   |
   Defendant   |
_____|

For the reasons set forth in the accompanying Brief, defendant Eric Holder, Jr., Attorney General of the United States, respectfully moves this Court for an order dismissing this action pursuant to Rule 12(b)(1), Federal Rules Civil Procedure, for lack of subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6), Federal Rules Civil Procedure, for failure to state a claim upon which relief can be granted.

-2-

Respectfully submitted,

BARBARA McQUADE                         THOMAS E. PEREZ
  United States Attorney                  Assistant Attorney General

TONY WEST
  Assistant Attorney General


 s/ Judith E. Levy                          s/ Linda F. Thome
JUDITH E. LEVY                          JESSICA DUNSAY SILVER
  Assistant United States Attorney      LINDA F. THOME
  Eastern District of Michigan            Department of Justice
  211 W. Fort Street, Ste. 2001           Civil Rights Division
  Detroit, MI 48226                        Appellate Section
  (313) 226-9727                           P.O. Box 14403
  judith.levy@usdoj.gov                    Ben Franklin Station
  P55882                                   Washington, D.C. 20044-4403
                                           Telephone:  (202) 514-4706
JOHN R. GRIFFITHS                          Facsimile:  (202 514-8490
  Deputy Branch Director                   linda.thome@usdoj.gov
                                           Attorneys for the Defendant
 s/ Eric J.Beane
ERIC J. BEANE
  Trial Attorney
  Department of Justice
  Civil Division, Federal Programs Branch
  P.O. Box 883
  Washington, D.C.  20044
  Telephone: (202) 616-2035
  Fascimile: (202) 616-8470
  eric.beane@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY GLENN, PASTOR LEVON YUILLE, |
PASTOR RENE B. OUELLETTER, PASTOR | Case No.  2:10-cv-10429-TLL-CEB
JAMES COMBS, |
 | THOMAS L. LUDINGTON
     Plaintiffs | United States District Judge
 |
v. | CHARLES E. BINDER
 | Magistrate Judge
ERIC HOLDER, Jr., in his official capacity as |
Attorney General of the United States, |
 |
 |
     Defendant |
_____|

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**

QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONTROLLING AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

I     THE COMPLAINT SHOULD BE DISMISSED
      FOR LACK OF SUBJECT MATTER JURISDICTION.. . . . . . . . . . . . . . . . . . . 9

      A.     *Plaintiffs Lack Standing To Maintain This Action*.. . . . . . . . . . . . . . . . . . 9

      B.     *Plaintiffs' Claims Are Not Ripe For Review.* . . . . . . . . . . . . . . . . . . . . . . 16

II    THE COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM UPON WHICH
      RELIEF CAN BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.     *The Shepard-Byrd Hate Crimes Act Does Not*
             *Violate The Free Speech Or Expressive Association*
             *Protections Of The First Amendment.* . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      B.     *The Shepard-Byrd Hate Crimes Act Does Not Violate*
             *The Free Exercise Clause Of The First Amendment.* . . . . . . . . . . . . . . . 24

      C.     *The Shepard-Byrd Hate Crimes Act Does Not*
             *Violate Equal Protection.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      D.     *Enactment Of Section 249(a)(2) Of The Hate Crimes Act*
             *Was Authorized By The Commerce Clause.* . . . . . . . . . . . . . . . . . . . . . . 26

      E.     *Enactment Of The Hate Crimes Act Did Not Violate*
             *The Tenth Amendment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:**                                                                                          **PAGE**

*ACLU* v. *National Sec. Agency*, 493 F.3d 644 (6th Cir. 2007),
    cert. denied, 128 S. Ct. 1334 (2008). ................................................................. 13

*Adult Video Ass'n* v. *United States*, 71 F.3d 563 (6th Cir. 1995). ............................... 16

*American Life League, Inc.* v. *Reno*, 855 F. Supp. 137 (E.D. Va. 1994),
    aff'd, *American Life League, Inc.* v. *Reno*, 47 F.3d 642 (4th Cir.),
    cert. denied, 516 U.S. 809 (1995). .................................................... 17, 19, 24-25

*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009). .................................................................. 18

*Babbitt* v. *United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ...................... 2, 10

*Baker* v. *Carr*, 369 U.S. 186 (1962). ........................................................................... 9

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ................................................. 18

*Bigelow* v. *Michigan Dep't of Nat. Res.*, 970 F.2d 154 (6th Cir. 1992). ................... 2, 16

*Bigelow* v. *Virginia*, 421 U.S. 809 (1975). ............................................................. 2, 12

*Broadrick* v. *Oklahoma*, 413 U.S. 601 (1973). ....................................................... 2, 20

*Caminetti* v. *United States*, 242 U.S. 470 (1917) ....................................................... 28

*Camps Newfound/Owatonna, Inc.* v. *Town of Harrison*, 520 U.S. 564 (1997) ............. 28

*Cheffer* v. *Reno*, 55 F.3d 1517 (11th Cir. 1995). ........................................................ 25

*Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520 (1993). ..... 25

*Daimler-Chrysler Corp.* v. *Cuno*, 547 U.S. 332 (2006). ............................................. 9

*Doe* v. *Bolton*, 410 U.S. 179 (1973). ......................................................................... 10

*Employment Div.* v. *Smith*, 494 U.S. 872 (1990). ................................................... 2, 25

*Gonzales* v. *Raich*, 545 U.S. 1 (2005) ....................................................................... 29

*Grayned* v. *City of Rockford*, 408 U.S. 104 (1972). .................................................. 23

**CASES (continued):** **PAGE**

*Greater Cincinnati Coalition for the Homeless* v. *City of Cincinnati*,
   56 F.3d 710 (6th Cir. 1995). ............................................................... 2, 10

*Hill* v. *Colorado*, 530 U.S. 703 (2000). ................................................... 23

*Hishon* v. *King Spaulding*, 467 U.S. 69 (1984). ...................................... 21

*Laird* v. *Tatum*, 408 U.S. 1 (1972).................................................... 12-13

*Linda R.S.* v. *Richard D.*, 410 U.S. 614 (1973). ....................................... 9

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992). ....................... 2, 9, 14

*McDonald* v. *Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976). ............... 26

*NAACP.* v. *Claiborne Hardware Co.*, 458 U.S. 886 (1982)..................... 19

*National Rifle Ass'n of Am.* v. *Magaw*, 132 F.3d 272 (6th Cir. 1997)......... 18

*New York* v. *Ferber*, 458 U.S. 747 (1982). ........................................ 2, 20

*New York* v. *United States*, 505 U.S. 144 (1992)................................... 31

*Norton* v. *Ashcroft*, 298 F.3d 547 (6th Cir. 2002),
   cert. denied, 537 U.S. 1172 (2003). ...................................... *passim*

*Norton* v. *Reno*, 2000 WL 1769580 (W.D. Mich. Nov. 24, 2000). ............... 17

*Papasan* v. *Allain*, 478 U.S. 265 (1986). ............................................ 18

*Parker* v. *Levy*, 417 U.S. 733 (1974). ................................................. 20

*Prime Media, Inc.* v. *City of Brentwood*, 485 F.3d 343 (6th Cir. 2007). ......... 15-16

*R.A.V.* v. *St. Paul*, 505 U.S. 377 (1992)............................................. 21

*Roberts* v. *United States Jaycees*, 468 U.S. 609 (1984)........................ 21, 24

*Runyon* v. *McCrary*, 427 U.S. 160 (1976). ........................................ 21

*Scarborough* v. *United States*, 431 U.S. 563 (1977). ............................. 29

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83 (1998). ..................... 9

**CASES (continued):** **PAGE**

*Tatum* v. *Laird*, 444 F.2d 947 (D.C. Cir. 1971), rev'd, 408 U.S. 1 (1972)................................. 12

*United States* v. *Bass*, 404 U.S. 336 (1971)........................................................ 29

*United States* v. *Baylor*, 517 F.3d 899 (6th Cir.),
    cert. denied, 128 S. Ct. 2982 (2008). ......................................................... 3, 30

*United States* v. *Bowers*, 594 F.3d 522 (6th Cir. 2010). ................................... 28

*United States* v. *Bowker*, 372 F.3d 365 (6th Cir. 2004),
    vacated on other grounds, 543 U.S. 1182 (2005)............................................. 20

*United States* v. *Bryan*, 524 U.S. 184 (1998)........................................................ 11

*United States* v. *Carney*, 387 F.3d 436 (6th Cir. 2004). ................................ 11-12, 23

*United States* v. *Corp*, 236 F.3d 325 (6th Cir. 2001). ........................................ 28

*United States* v. *Dolt*, 27 F.3d 235 (6th Cir. 1994)............................................ 12

*United States* v. *Green*, 350 U.S. 415 (1956). .................................................... 30

*United States* v. *Lopez*, 514 U.S. 549 (1995)................................................... 2, 27, 29

*United States* v. *McHenry*, 97 F.3d 125 (6th Cir. 1996),
    cert. denied, 519 U.S. 1131 (1997). ........................................................... 29

*United States* v. *Morrison*, 529 U.S. 598 (2000). ........................................... 2, 28, 30

*United States* v. *Napier*, 233 F.3d 394 (6th Cir. 2000)......................................... 3, 29

*United States* v. *Page*, 167 F.3d 325 (6th Cir.) (en banc),
    cert. denied, 528 U.S. 1003 (1999). ....................................................... 2, 27-28

*United States* v. *Rahman*, 189 F.3d 88 (2d Cir. 1999),
    cert. denied, 528 U.S. 1094 (2000). ........................................................ 19, 25

*United States* v. *Raines*, 362 U.S. 17 (1960). ................................................... 19

*United States* v. *Rayborn*, 312 F.3d 229 (6th Cir. 2002). ................................... 30

*United States* v. *Salerno*, 481 U.S. 739 (1987).................................................. 27

**CASES (continued):**                                                                                       **PAGE**

*United States* v. *Skillman*, 922 F.2d 1370 (9th Cir. 1990). ........................................................  13

*United States* v. *Weathers*, 169 F.3d 336 (6th Cir.),
    cert. denied, 528 U.S. 838 (1999). ................................................................ 3, 29

*United States* v. *Williams*, 553 U.S. 285 (2008). ................................................... 2, 23

*Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)............... 23

*Virginia* v. *American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988). .................................. 10, 15

*Warth* v. *Seldin*, 422 U.S. 490 (1975). ................................................................ 2, 9, 15

*Washington State Grange* v. *Washington State Republican Party*,
    552 U.S. 442 (2008)...................................................................... *passim*

*White* v. *United States*, 2010 WL 1404377 (6th Cir. April 9, 2010). .................................... 12, 14

*Wisconsin* v. *Mitchell*, 508 U.S. 476 (1993). ....................................................... *passim*

*Younger* v. *Harris*, 401 U.S. 37 (1971). .............................................................. 10

**CONSTITUTION:**

U.S. Const. Art. I, § 8. .............................................................................. 27

**STATUTES:**

Freedom of Access to Clinic Entrances Act (FACE), 18 U.S.C. 248.................................... 17, 20
    18 U.S.C. 248(a)(1)........................................................... 17

Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act,
    Pub. L. No. 111-84, Div. E, 123 Stat. 2190 (Oct. 28, 2009)...................................... *passim*
    18 U.S.C. 249 ......................................................... 25
    18 U.S.C. 249(a)(2)........................................................... *passim*
    18 U.S.C. 249(a)(2)(B). ....................................................... 4, 27
    18 U.S.C. 249(a)(2)(B)(i)........................................................ 29
    18 U.S.C. 249(a)(2)(B)(ii)....................................................... 29
    18 U.S.C. 249(a)(2)(B)(iii)...................................................... 29
    18 U.S.C. 249(a)(2)(B)(iv)....................................................... 30
    18 U.S.C. 249(b). ........................................................... 5, 31

18 U.S.C. 2 ........................................................................................ 11-12

**STATUTES (continued):**                                                **PAGE**

18 U.S.C. 844(i). ........................................................................................ 30

18 U.S.C. 1951(a). ..................................................................................... 30

18 U.S.C. 1958(a). ..................................................................................... 29

42  U.S.C. 1981. ........................................................................................ 26

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 86, Pt. 1, 111th Cong., 1st Sess. (2009). .............................  6

**MISCELLANEOUS:**

William Blackstone, Commentaries. ....................................................... 21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY GLENN, PASTOR LEVON YUILLE,          |
PASTOR RENE B. OUELLETTER, PASTOR          |          Case No. 2:10-cv-10429-TLL-CEB
JAMES COMBS,                               |
                                           |          THOMAS L. LUDINGTON
                         Plaintiffs        |          United States District Judge
                                           |
v.                                         |          CHARLES E. BINDER
                                           |          Magistrate Judge
ERIC HOLDER, Jr., in his official capacity as |
Attorney General of the United States,     |
                                           |          BRIEF IN SUPPORT
                                           |          OF DEFENDANT'S MOTION
                         Defendant         |          TO DISMISS
_____|

Defendant Eric Holder, Jr., Attorney General of the United States, respectfully moves this

Court for an order dismissing this action pursuant to Rule 12(b)(1), Federal Rules Civ. P., for

lack of subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6), Federal Rules

Civ. P., for failure to state a claim upon which relief can be granted.

## QUESTIONS PRESENTED

1.  Whether plaintiffs lack standing to maintain this action.

2.  Whether plaintiffs' claims are ripe for judicial review.

3.  Whether the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act (the

Shepard-Byrd Hate Crimes Act or the Hate Crimes Act) violates the Free Speech or Freedom of

Association Clauses of the First Amendment.

4.  Whether the Shepard-Byrd Hate Crimes Act violates the Free Exercise Clause of the

First Amendment.

-2-

5.  Whether the Hate Crimes Act violates the Equal Protection requirements of the Fifth Amendment.

6.  Whether Congress has the authority to enact Section 249(a)(2) of the Shepard-Byrd Hate Crimes Act pursuant to the Commerce Clause.

7.  Whether the Shepard-Byrd Hate Crimes Act violates the Tenth Amendment.

## CONTROLLING AUTHORITY

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992)

*Warth* v. *Seldin*, 422 U.S. 490 (1975)

*Babbitt* v. *United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)

*Bigelow* v. *Virginia*, 421 U.S. 809 (1975)

*Greater Cincinnati Coalition for the Homeless* v. *City of Cincinnati*, 56 F.3d 710 (6th Cir. 1995)

*Wisconsin* v. *Mitchell*, 508 U.S. 476 (1993)

*Bigelow* v. *Michigan Dep't of Nat. Res.*, 970 F.2d 154 (6th Cir. 1992)

*Norton* v. *Ashcroft*, 298 F.3d 547 (6th Cir. 2002), cert. denied, 537 U.S. 1172 (2003)

*New York* v. *Ferber*, 458 U.S. 747 (1982)

*Broadrick* v. *Oklahoma*, 413 U.S. 601 (1973)

*United States* v. *Williams*, 553 U.S. 285, 128 S. Ct. 1830 (2008)

*Employment Div.* v. *Smith*, 494 U.S. 872 (1990)

*Washington State Grange* v. *Washington State Republican Party*, 552 U.S. 442 (2008)

*United States* v. *Lopez*, 514 U.S. 549 (1995)

*United States* v. *Page*, 167 F.3d 325 (6th Cir.) (en banc), cert. denied, 528 U.S. 1003 (1999)

*United States* v. *Morrison*, 529 U.S. 598 (2000)

-3-

*United States* v. *Weathers*, 169 F.3d 336 (6th Cir.), cert. denied, 528 U.S. 838 (1999)

*United States* v. *Napier*, 233 F.3d 394 (6th Cir. 2000)

*United States* v. *Baylor*, 517 F.3d 899 (6th Cir.), cert. denied, 128 S. Ct. 2982 (2008)

## STATEMENT OF THE CASE

This is a pre-enforcement challenge to one of the criminal provisions of the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act (the Shepard-Byrd Hate Crimes Act or the Hate Crimes Act). Plaintiffs do not allege that they have been prosecuted under the Act, that they have been threatened with such prosecution, or that they intend to engage in any conduct prohibited by the Act. The Act does not proscribe speech. It prohibits only violent conduct and includes specific provisions ensuring that it may not be applied to infringe any rights guaranteed by the First Amendment. The Act applies evenhandedly to all who commit bias-motivated acts, regardless of ideology or religious belief. As relevant here, the Act requires proof of an interstate commerce connection in every case. Nonetheless, plaintiffs, speculating that the Act may be enforced against them because of their strong public views, contend that the Act is facially invalid in violation of the First Amendment, that it violates the Equal Protection guarantees of the Fifth Amendment, that it exceeds Congress's authority under the Commerce Clause, and that it violates the Tenth Amendment.

As explained below, plaintiffs' claims should be dismissed for lack of jurisdiction because plaintiffs lack standing and because their claims are not ripe for review. In the alternative, plaintiffs claims should be dismissed for failure to state a claim upon which relief can be granted.

-4-

1.  The Shepard-Byrd Hate Crimes Act was enacted by Congress and signed into law by the President in October 2009.  Pub. L. No. 111-84, Div. E, 123 Stat. 2190 (Oct. 28, 2009).  Sections 4704-4706 of the Act authorize financial and other assistance to state and local authorities for the investigation and prosecution of hate crimes, while Section 4707 creates federal criminal offenses, to be codified at 18 U.S.C. 249, for bias-motivated violent conduct.

The criminal provisions of the Act prohibit only willful, violent conduct.  At issue in this case is Section 249(a)(2), which provides criminal penalties for:

> (A) IN GENERAL. — Whoever, whether or not acting under color of law, in any circumstance described in subparagraph (B) or paragraph (3), *willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person*, because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person.

18 U.S.C. 249(a)(2) (emphasis added).[1]  Section 249(a)(2) also requires proof of one of several interstate commerce elements.  See 18 U.S.C. 249(a)(2)(B).

No federal prosecution may be undertaken for violations of the Act in the absence of a certification by the Attorney General or a designee that:

> (A) the State does not have jurisdiction;

> (B) the State has requested that the Federal Government assume jurisdiction;

---

[1]  Section 249(a)(1) provides criminal penalties for such violent conduct committed "because of the actual or perceived race, color, religion, or national origin of any person." Section 249(a)(3) provides criminal penalties for conduct described in Sections 249(a)(1) or (a)(2) that occurs in the special maritime or territorial jurisdiction of the United States.  These provisions are not at issue in this case.

-5-

(C) the verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating bias-motivated violence; or

(D) a prosecution by the United States is in the public interest and necessary to secure substantial justice.

18 U.S.C. 249(b).

Congress made several statutory findings when it enacted the Act, including the following:

(1) The incidence of violence motivated by the actual or perceived race, color, religion, national origin, gender, sexual orientation, gender identity, or disability of the victim poses a serious national problem.

(2) Such violence disrupts the tranquility and safety of communities and is deeply divisive.

(3) State and local authorities are now and will continue to be responsible for prosecuting the overwhelming majority of violent crimes in the United States, including violent crimes motivated by bias.  These authorities can carry out their responsibilities more effectively with greater Federal assistance.

(4) Existing Federal law is inadequate to address this problem.

(5) A prominent characteristic of a violent crime motivated by bias is that it devastates not just the actual victim and the family and friends of the victim, but frequently savages the community sharing the traits that caused the victim to be selected.

(6) Such violence substantially affects interstate commerce in many ways, including the following:

(A) The movement of members of targeted groups is impeded, and members of such groups are forced to move across State lines to escape the incidence or risk of such violence.

(B) Members of targeted groups are prevented from purchasing goods and services, obtaining or sustaining employment, or participating in other commercial activity.

-6-

(C) Perpetrators cross State lines to commit such violence.

(D) Channels, facilities, and instrumentalities of interstate commerce are used to facilitate the commission of such violence.

(E) Such violence is committed using articles that have traveled in interstate commerce.

* * * * *

(9) Federal jurisdiction over certain violent crimes motivated by bias enables Federal, State, and local authorities to work together as partners in the investigation and prosecution of such crimes.

(10) The problem of crimes motivated by bias is sufficiently serious, widespread, and interstate in nature as to warrant Federal assistance to States, local jurisdictions, and Indian tribes.

Pub. L. No. 111-84, Div. E, Sec. 4702 (1)-(6), (9), (10), 123 Stat. 2835 (Oct. 28, 2009).

Before enacting the statute, Congress heard evidence about the prevalence of hate crimes and the need for federal involvement to address the problem.  As the House Report on the bill stated, such offenses "are disturbingly prevalent and pose a significant threat to the full participation of all Americans in our democratic society."  H.R. Rep. No. 86, 111th Cong., 1st Sess. Pt. 1 at 5 (2009).  In 2007 alone, the FBI had documented more than 7,600 hate crimes, including 1,265 incidents (16.6%) motivated by bias based upon sexual orientation.  *Ibid.*  The enactment of the Hate Crimes Act, the House Report explained, would provide assistance to state and local law authorities for the investigation and prosecution of such crimes, and would permit federal prosecutions "where the State does not have an appropriate statute, or otherwise declines to investigate or prosecute; where the State requests that the Federal Government assume jurisdiction; or where actions by State and local law enforcement officials leave demonstratively unvindicated the Federal interest in eradicating bias-motivated violence."  *Id.* at 6.  The House

-7-

Report emphasized that the State and local authorities would continue to "investigate and prosecute the overwhelming majority of hate crimes." *Ibid.*

2.  Congress also enacted rules of construction to ensure that the Act is enforced in ways that are consistent with the First Amendment and the Federal Rules of Evidence:

>  (1) IN GENERAL. — Nothing in this division shall be construed to allow a court, in any criminal trial for an offense described under this division or an amendment made by this division, in the absence of a stipulation by the parties, to admit evidence of speech, beliefs, association, group membership, or expressive conduct unless that evidence is relevant and admissible under the Federal Rules of Evidence.

>  (2) VIOLENT ACTS. — This division applies to violent acts motivated by actual or perceived race, color, religion, national origin, gender, sexual orientation, gender identity or disability of a victim.

>  (3) CONSTRUCTION AND APPLICATION. — Nothing in this division, or an amendment made by this division, shall be construed or applied in a manner that infringes any rights under the first amendment of the Constitution of the United States.  Nor shall anything in this division, or an amendment made by this division, be construed or applied in a manner that substantially burdens a person's exercise of religion (regardless of whether compelled by, or central to, a system of religious belief), speech, expression, or association, unless the Government demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest, if such exercise of religion, speech, expression, or association was not intended to –

>>  (A) plan or prepare for an act of physical violence; or

>>  (B) incite an imminent act of physical violence against another.

>  (4) FREE EXPRESSION. — Nothing in this division shall be construed to allow prosecution based solely upon an individual's expression of racial, religious, political, or other beliefs or solely upon an individual's membership in a group advocating or espousing such beliefs.

>  (5) FIRST AMENDMENT. — Nothing in this division, or an amendment made by this division, shall be construed to diminish any rights under the first amendment to the Constitution of the United States.

-8-

> (6) CONSTITUTIONAL PROTECTIONS. — Nothing in this division shall be construed to prohibit any constitutionally protected speech, expressive conduct or activities (regardless of whether compelled by, or central to, a system of religious belief), including the exercise of religion protected by the first amendment to the Constitution of the United States and peaceful picketing or demonstration.  The Constitution of the United States does not protect speech, conduct or activities consisting of planning for, conspiring to commit, or committing an act of violence.

Pub. L. No. 111-84, Div. E, Sec. 4710 (1)-(6), 123 Stat. 2841 (Oct. 28, 2009).

3.  This is a pre-enforcement, facial challenge to the constitutionality of the Hate Crimes Act.  According to the complaint, plaintiffs "take a strong public stand against homosexual activism, the homosexual lifestyle, and the homosexual agenda."  Complaint ¶¶ 17, 19, 22, 24.  Plaintiffs allege that "[c]lear and emphatic opposition to homosexuality, homosexual activism, and the homosexual agenda is a duty of all Christians," and that they "publicly denounce homosexuality, homosexual activism, and the homosexual agenda as being contrary to God's law and His divinely inspired Word."  Complaint ¶¶ 37-38.  Plaintiffs do not allege that they intend to cause bodily injury or to attempt to cause bodily injury to any person.

Plaintiffs brought this action against Attorney General Eric Holder, Jr., in his official capacity.  Complaint ¶ 26.  They contend that the Act violates their rights under the First Amendment and the Equal Protection Clause of the Fifth Amendment, that Congress lacked the authority to enact the Act under the Commerce Clause, and that the Act violates the Tenth Amendment.  Complaint ¶¶ 102-125.  They seek a declaration that the Act violates these provisions of the Constitution and an injunction barring its application to their speech or activities.

-9-

## ARGUMENT

## I

## THE COMPLAINT SHOULD BE DISMISSED
## FOR LACK OF SUBJECT MATTER JURISDICTION

A.     *Plaintiffs Lack Standing To Maintain This Action*

1. To establish standing, as an "irreducible constitutional minimum," a plaintiff must

establish that he or she has "suffered an 'injury in fact' – an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or

'hypothetical.'" *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations & internal

quotation marks omitted).  The "threshold question" in determining standing is "whether the

plaintiff has made out a 'case or controversy' between himself and the defendant," that is,

"whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to

warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

powers on his behalf." *Warth* v. *Seldin*, 422 U.S. 490, 498-499 (1975) (quoting *Baker* v. *Carr*,

369 U.S. 186, 204 (1962)).  The requisite "personal stake" exists "only when the plaintiff himself

has suffered 'some threatened or actual injury resulting from the putatively illegal action.'"  *Id.* at

499 (quoting *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 617 (1973)).  Plaintiffs are required to

demonstrate standing for each specific claim that they seek to raise.  *Daimler-Chrysler Corp.* v.

*Cuno*, 547 U.S. 332, 352 (2006).  Further, a court should not consider the merits of an action

unless and until it is satisfied that plaintiffs have standing and that their claims are ripe.  See *Steel*

*Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998).

-10-

Plaintiffs may assert sufficient injury to bring a pre-enforcement challenge to a criminal statute only if they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution thereunder." *Babbitt* v. *United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citing *Doe* v. *Bolton*, 410 U.S. 179, 188 (1973)). In *Virginia* v. *American Booksellers Ass'n, Inc*., 484 U.S. 383, 392 (1988), this requirement was met because the law plaintiffs sought to challenge was "aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." On the other hand, "persons having no fears of * * * prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt*, 442 U.S. at 298 (quoting *Younger* v. *Harris*, 401 U.S. 37, 42 (1971)). Thus, in *Greater Cincinnati Coalition for the Homeless* v. *City of Cincinnati*, 56 F.3d 710, 716 (6th Cir. 1995), the plaintiff did not have standing to challenge an anti-panhandling ordinance where he had not violated the ordinance in the past and did not allege that he intended to violate its terms in the future.

Plaintiffs here cannot meet the threshold requirement for standing because they have not alleged that they intend "to engage in a course of conduct * * * proscribed by [the] statute," let alone that "there exists a credible threat of prosecution thereunder." *Babbitt*, 442 U.S. at 298. In particular, they have not alleged that they intend to "willfully cause[] bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempt[] to cause bodily injury to any person, because of the actual or perceived * * * sexual orientation * * * of any person." 18 U.S.C. 249(a)(2). Thus, they have not alleged that they will suffer an injury in fact as a result of the Shepard-Byrd Hate Crimes Act.

-11-

Plaintiffs nonetheless allege that the Act authorizes "federal investigative and other federal law enforcement actions against" them because of their opposition to "homosexual activism, the homosexual lifestyle, and the homosexual agenda," Complaint ¶ 48, and that the Act will subject them "to increased government scrutiny, questioning, investigation, [and] surveillance on account of" their opposition, Complaint ¶ 52.  There is no basis for these allegations in the language of the Act itself, which prohibits only willful, violent conduct – "willfully caus[ing] bodily injury to any person" or attempting to cause such injury "through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device."  18 U.S.C. 249(a)(2); see also Section 4710 ("This division applies to *violent acts* motivated by actual or perceived race, color, religion, national origin, gender, sexual orientation, gender identity or disability of a victim.") (emphasis added).  To establish a "willful" violation of the Act, the prosecution must prove "that the defendant knew both the pertinent fact(s) and understood the illegality of the pertinent charged conduct."  *United States* v. *Carney*, 387 F.3d 436, 442 (6th Cir. 2004) (citing *United States* v. *Bryan*, 524 U.S. 184, 192-93 (1998)).  Because plaintiffs do not allege that they intend willfully to engage in any violent conduct that might subject them to prosecution under the Act, there is no likelihood that they will be subjected to any federal action or otherwise injured by enforcement of the Act.

Plaintiffs' allegation, Complaint ¶¶ 54-69, that the Act will subject them to liability under 18 U.S.C. 2 is also without foundation.  Section 2(a) of Title 18 provides that one who "aids, abets, counsels, commands, induces or procures" an offense "is punishable as a principal."  To establish this offense, the prosecution must prove "that the substantive offense has been committed" and "that the defendant committed overt acts or affirmative conduct to further the

-12-

offense, and intended to facilitate the commission of the crime." *United States* v. *Dolt*, 27 F.3d 235, 238 (6th Cir. 1994) (citations omitted); see *Carney*, 387 F.3d at 446 (affirming a conviction under 18 U.S.C. 2 where "[t]he record evidence compellingly demonstrated that the defendant[s] * * * knowingly, willfully, actively, and repeatedly collaborated with a convicted felon's ongoing unlawful conspiratorial scheme"). Thus mere speech – without the intent to facilitate the commission of a violent act and some active assistance or participation in the offense itself – could never be the basis for a prosecution for aiding and abetting a violation of the Hate Crimes Act. Plaintiffs have not alleged that they intend to commit any overt acts to further an offense under the Act or to facilitate the commission of any violent conduct that might violate the Act.

Plaintiffs also contend that the possibility that they will be investigated in connection with a hate crime chills their exercise of their First Amendment rights. See *e.g.*, Complaint ¶¶ 52, 69. But these contentions are insufficient to establish standing. Even in the First Amendment context, plaintiffs "must present more than '[a]llegations of a subjective chill.' There must be a 'claim of specific present objective harm or a threat of specific future harm.'" *Bigelow* v. *Virginia*, 421 U.S. 809, 816-817 (1975) (quoting *Laird* v. *Tatum*, 408 U.S. 1, 13-14 (1972)) (internal quotation marks omitted); *White* v. *United States*, No. 09-3158, 2010 WL 1404377, at *7 (6th Cir. April 9, 2010). In *Laird*, "most if not all of the [plaintiffs]" established that they had "been the subject of Army surveillance reports." *Tatum* v. *Laird*, 444 F.2d 947, 954 n.17 (D.C. Cir. 1971), rev'd, 408 U.S. 1 (1972). They contended that the surveillance of their activities had "chilled" their exercise of First Amendment rights. *Laird*, 408 U.S. at 13. The Supreme Court nevertheless held that plaintiffs failed to demonstrate "a direct injury as the result of [the Government's] action" because their decision to curtail their expressive activity reflected

-13-

a "subjective 'chill'" that did not qualify as a "specific present objective harm or a threat of specific future harm" caused by the Government's surveillance. *Id.* at 13-14 (citation omitted); see also *ACLU* v. *National Sec. Agency*, 493 F.3d 644, 661 (6th Cir. 2007) ("[T]o allege a sufficient injury under the First Amendment, a plaintiff must establish that he or she is regulated, constrained, or compelled directly by the government's actions, instead of by his or her own subjective chill."), cert. denied, 552 U.S. 1179 (2008); see *id.* at 689 (Gibbons, J., concurring in the judgment).

The Supreme Court addressed a similar claim of a subjective "chill" in *Wisconsin* v. *Mitchell*, 508 U.S. 476 (1993), a First Amendment challenge to a state statute that enhanced an offender's sentence if his crime was motivated by bias. The Court rejected the defendant's claim that the statute was "unconstitutionally overbroad because of its 'chilling effect' on free speech," finding the claim too speculative to support an overbreadth challenge:

> The sort of chill envisioned here is far more attenuated and unlikely than that contemplated in traditional "overbreadth" cases. We must conjure up a vision of a Wisconsin citizen suppressing his unpopular bigoted opinions for fear that if he later commits an offense covered by the statute, these opinions will be offered at trial to establish that he selected his victim on account of the victim's protected status, thus qualifying him for penalty enhancement. * * * This is simply too speculative a hypothesis to support Mitchell's overbreadth claim.

*Id.* at 488-490.

In this case, plaintiffs' claim is even more attenuated than in *Mitchell* or *Laird*. The Act prohibits violent conduct, not speech. Evidence of speech, expression, or associations (see Sec. 4710(1); Complaint ¶ 51) generally would be relevant and thus admissible in a prosecution against one who has engaged in the prohibited violent actions to prove *that individual's* motive. See *Mitchell*, 508 U.S. at 489-490; *United States* v. *Skillman*, 922 F.2d 1370, 1372-1374 (9th

-14-

Cir. 1990).  But plaintiffs do not allege that they intend to engage in any such violent conduct.

Thus, their claim that they will be subjected to any kind of investigation is pure speculation.  To

be sure, like all citizens, if plaintiffs have information relevant to the investigation of a violent

offense, they may be asked to provide that information to law enforcement officials.  But the

mere possibility that they might be called upon to do so in relation to an offense that might occur

in the future is simply too "'conjectural' or 'hypothetical'" to constitute a claim of actual injury

necessary to establish standing.  *Lujan*, 504 U.S. at 560 (citation omitted).

Finally, plaintiffs recite alleged statements by third parties, Complaint ¶¶ 57-67, claims

about the enforcement of allegedly similar legislation in other jurisdictions, Complaint  ¶¶ 70-72,

and isolated statements by Congressional supporters of the legislation that ultimately was enacted

as the Shepard-Byrd Hate Crimes Act, Complaint  ¶¶ 59, 74-75, in support of their contention

that they could be investigated or prosecuted for violating the Act based solely on their speech.

But these allegations are simply irrelevant.  None of the individuals or organizations quoted have

any responsibility for the enforcement of the Act.  And it is the language of the Act – not the

enforcement of allegedly "similar" statutes in other jurisdictions, or isolated statements of

supporters – that will govern its enforcement.  The Hate Crimes Act prohibits only willful,

violent conduct.  It does not criminalize speech.[2]

2.  In addition to these minimum constitutional requirements, the courts impose

prudential limits on litigants' standing.  Of particular relevance here, "even when the plaintiff has

---

[2]  Any allegation that plaintiffs might be subjected to false prosecution under the Hate Crimes Act solely because of their public views or associations is too speculative to confer standing.  *White* v. *United States*, 2010 WL 1404377, at *6.  Such false prosecution could occur only *if* a hate crime occurred, *if* plaintiffs' speech was somehow associated with such an offense, and *if* the Act was improperly enforced.  *Id.* at *8.

-15-

alleged injury sufficient to meet the 'case or controversy' requirement, * * * the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. This prudential limit is relaxed for plaintiffs who allege that a statute is overbroad in violation of the First Amendment. Such plaintiffs "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *American Booksellers Ass'n, Inc.*, 484 U.S. at 392-393 (internal citations & quotation marks omitted). But this principle does not overcome the "irreducible minimum" requirement that a plaintiff allege a personal stake in the litigation. Even plaintiffs seeking to assert an overbreadth challenge must first allege sufficient facts to establish a claim that *they* have suffered or are likely to suffer some injury as a result of the challenged statute. See *Prime Media, Inc.* v. *City of Brentwood*, 485 F.3d 343, 353-354 (6th Cir. 2007). As explained above, plaintiffs here have failed to allege any such harm because they have not alleged that they intend to engage in conduct that is likely to subject them to prosecution under the statute. Therefore, they lack standing to assert an overbreadth claim.

Plaintiffs seek to assert a classic "generalized grievance" against a federal statute with which they disagree. They complain that the statute is "inherently divisive" and creates "a special, protected class of persons under federal law." Complaint ¶¶ 1, 3. They allege that the Act "seeks to normalize" behavior that they believe to be "contrary to the moral law and harmful to the common good of society." Complaint ¶ 4. These and other grievances contained in plaintiffs' complaint amply illustrate why the Judicial Branch imposes prudential standings

-16-

requirements.  If mere disagreement with a federal policy were enough to create a federal case, then the judicial system would be flooded with claims.  The generalized grievance standing barrier prevents this from happening by blocking claims that are rooted in ideological disagreements and not designed to redress a specific, concrete injury.  "Prudential standing requirements preclude litigation in federal court 'when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens,' or where instead of litigating 'his own legal rights and interests,' the plaintiff instead purports to 'rest his claim to relief on the legal rights or interests of third parties.'"  *Prime Media, Inc.*, 485 F.3d at 349 (citation & internal quotation marks omitted).

Plaintiffs therefore lack standing to bring a pre-enforcement challenge to the Act.

B.      *Plaintiffs' Claims Are Not Ripe For Review*

This court also lacks subject matter jurisdiction because plaintiffs' claims are not ripe for review.  *Bigelow* v. *Michigan Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992); *Norton* v. *Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002), cert. denied, 537 U.S. 1172 (2003).  As *Norton* explained, the "[r]ipeness doctrine exists 'to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.'"  *Ibid*. (citation omitted).  In determining ripeness, "this court examines (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied."  *Ibid*. (citing *Adult Video Ass'n* v. *United States*, 71 F.3d 563, 568 (6th Cir. 1995)).  In a pre-enforcement challenge such as this one, "a case is ordinarily ripe for review only if the probability of the future event occurring is

-17-

substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Ibid*. (internal citation & quotation marks omitted).

All three of these factors indicate that plaintiffs' claims are not ripe for review. First, as

explained above (pp. 3, 8, *supra*), plaintiffs have not alleged that they intend to engage in any

conduct that might violate the Act. Thus, there is *no* "likelihood that the harm alleged will ever

come to pass." *Norton*, 298 F.3d at 554. This case is quite unlike the facial challenges to the

Freedom of Access to Clinic Entrances Act (FACE), 18 U.S.C. 248, which prohibits not only

violent conduct but also "threat[s] of force" and "physical obstruction."[3]  The plaintiffs in

*Norton*, for example, alleged that they had engaged in "protesting, praying and counseling on the

sidewalks around" a Planned Parenthood clinic; that federal law enforcement officials had told

the plaintiffs they might be arrested if they did not move their protests across the street from the

clinic; and that they had limited their protest activities at the clinic because of these threats.

*Norton* v. *Reno*, No. 4:00-CV-141, 2000 WL 1769580, at *1-2 (W.D. Mich. Nov. 24, 2000); see

also *American Life League, Inc*. v. *Reno*, 855 F. Supp. 137, 139 (E.D. Va. 1994) (finding

plaintiffs' claims ripe only after they amended their complaint to allege that "their action at times

has constituted, and in the future will constitute * * * 'a physical obstruction' * * * and that by so

doing, they interfere with, and/or intimidate and/or injure abortion seekers and providers"), aff'd,

 47 F.3d 642 (4th Cir.), cert. denied, 516 U.S. 809 (1995).

---

[3]  FACE provides criminal penalties for anyone, who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services."  18 U.S.C. 248(a)(1).

-18-

Second, because they have brought a facial challenge to the Act, plaintiffs' claims exist in a factual vacuum.  No offense has occurred.  No offenders have been charged.  There is no factual predicate to determine whether any particular application of the Act is constitutional.  "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review."  *National Rifle Ass'n of Am.* v. *Magaw*, 132 F.3d 272, 280 (6th Cir. 1997).  "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all."  *Id.* at 284.

Finally, because plaintiffs have not established any likelihood of harm resulting from enforcement of the Act, they will suffer no hardship if their claims are not reviewed.

## II

### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if plaintiffs had standing and their claims were ripe, the complaint must be dismissed for failure to state a claim upon which relief can be granted.  In addressing a motion to dismiss a complaint for failure to state a claim, a court "must take all the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  In addressing a facial challenge, a court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."  *Washington State Grange* v. *Washington State Republican Party*, 552 U.S.

-19-

442, 450 (2008) (citing *United States* v. *Raines*, 362 U.S. 17, 22 (1960)); *Sabri* v. *United States*, 541 U.S. 600, 609-610 (2004) ("Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks.  Facial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually barebones records.") (quoting *Raines*, 362 U.S. at 22).

A.   *The Shepard-Byrd Hate Crimes Act Does Not Violate The Free Speech Or Expressive Association Protections Of The First Amendment*

The Shepard-Byrd Hate Crimes Act prohibits only willful, violent conduct.  Such conduct is entitled to no protection under the First Amendment.  *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence.  'Certainly violence has no sanctuary in the First Amendment, and the use of weapons, gunpowder, and gasoline may not constitutionally masquerade under the guise of advocacy.'") (quoting *Samuels* v. *Mackell*, 401 U.S. 66, 75 (1971) (Douglas, J., concurring)); *Wisconsin* v. *Mitchell*, 508 U.S. 476, 484 (1993) ("A physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment."); *American Life League, Inc.* v. *Reno*, 47 F.3d 642, 648 (4th Cir.) ("The use of force or violence is outside the scope of First Amendment protection."), cert. denied, 516 U.S. 809 (1995); *United States* v. *Rahman*, 189 F.3d 88, 114-116 (2d Cir. 1999) (statute prohibiting conspiracy to use force against the United States does not, on its face, violate the First Amendment), cert. denied, 528 U.S. 1094 (2000).  Moreover, if there were any doubt, the Rules of Construction set forth in Section 4710(3)-(6) of the Act (see pp. 6-8, *supra*) ensure

-20-

that the Act may not be enforced in such a way as to violate the First Amendment.  The Act thus

regulates conduct that is wholly outside the protection of the First Amendment.[4]

Plaintiffs' contention (Complaint ¶ 104) that the Act is overbroad is meritless.  "The

overbreadth doctrine is 'strong medicine'" to be applied "with hesitation, and then 'only as a last

resort.'"  *New York* v. *Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick* v. *Oklahoma*, 413

U.S. 601, 613 (1973)).  Particularly when a statute proscribes conduct and not pure speech, "the

overbreadth of a statute must not only be real, but substantial as well, judged in relation to the

statute's plainly legitimate sweep."  *Broadrick*, 413 U.S. at 615; see *Parker* v. *Levy*, 417 U.S.

733, 760 (1974) ("[E]ven if there are marginal applications in which a statute would infringe on

First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute . . .

covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'")

(citation omitted).  Here, of course, the Act reaches *no* protected conduct.  And, as the Court

recognized in *Mitchell*, the mere possibility that any speech or association might be chilled is

"too speculative a hypothesis to support [an] overbreadth claim."  508 U.S. at 488-489; see

*United States* v. *Bowker*, 372 F.3d 365, 378 (6th Cir. 2004) ("We fail to see how a law that

prohibits interstate travel with the intent to kill, injure, harass or intimidate has a substantial

sweep of constitutionally protected conduct."), vacated on other grounds, 543 U.S. 1182 (2005).

*Mitchell* also makes it clear that the Act is not invalid because, just like numerous other

anti-discrimination statutes, it prohibits only *bias-motivated* conduct.  In *Mitchell*, the Court

---

[4] As explained above (p. 17, *supra*), unlike 18 U.S.C. 248, the Hate Crimes Act does not "incidentally affect" *any* "conduct with expressive elements, such as peaceful but obstructive picketing."  *Norton* v. *Ashcroft*, 298 F.3d 547, 552 (6th Cir. 2002).  Thus it is not necessary to subject the Act to intermediate scrutiny.  *Id.* at 553 (applying intermediate scrutiny to Section 248 as a content-neutral restriction that might incidentally affect protected expression).

-21-

unanimously upheld a Wisconsin statute that increased the penalty for crimes motivated by bias,

specifically rejecting a claim that the statute "punishes the defendant's discriminatory motive, or

reason, for acting."  508 U.S. at 487.  As *Mitchell* explained, "motive plays the same role under

the Wisconsin statute as it does under federal and state anti-discrimination laws," which the

Court previously had upheld "as content neutral regulation of conduct."  *Ibid.* (citing *Roberts* v.

*United States Jaycees*, 468 U.S. 609, 628 (1984); *Hishon* v. *King Spaulding*, 467 U.S. 69, 78

(1984); *Runyon* v. *McCrary*, 427 U.S. 160, 176 (1976); *R.A.V.* v. *St. Paul*, 505 U.S. 377, 389-390

(1992)).  Moreover, Wisconsin justified the penalty-enhancement statute on the ground that bias-

motivated "conduct is thought to inflict greater individual and societal harm."  *Mitchell*, 508 U.S.

at 487-488; see also *id*. at 488 ("As Blackstone said long ago, 'it is but reasonable that among

crimes of different natures those should be most severely punished, which are the most

destructive of the public safety and happiness.'") (quoting William Blackstone, 4 Commentaries

*16).  The Supreme Court concluded that the State's determination to redress these harms

indicated that the statute was not intended to punish offenders for their beliefs.  *Id.* at 488.

Similarly, Congress has determined that hate crimes pose special societal harms, finding that

violence motivated by bias "disrupts the tranquility and safety of communities and is deeply

divisive," and that such violence not only affects the victim and his or her family and friends, but

also "frequently savages the community sharing the traits that caused the victim to be selected."

Hate Crimes Act, Pub. L. No. 111-84, Div. E, Sec. 4702(2) & (5), 123 Stat. 2835 (see p. 5,

*supra*) .  As in *Mitchell*, these findings indicate that Congress intended to remedy the harms

caused by bias-motivated crimes, and that the Act was not intended to punish anyone because of

their viewpoint.

-22-

*Mitchell* also disposes of any contention that the Act is facially unconstitutional because its enforcement might involve the admission of evidence of the defendant's speech:  "The First Amendment * * * does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.  Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like."  508 U.S. at 489.  Of course, as *Mitchell* makes clear and as explained above (pp. 13-14, *supra*), such evidence generally is admissible to prove the *defendant's* motive. The Hate Crimes Act prohibits only violent conduct, not speech, and plaintiffs here do not allege that they intend to engage in any conduct that might subject them to prosecution under the Act. In any event, any disputes over the admission of arguably protected expression are best addressed in particular cases, where the relevance of the evidence may be weighed against any possible First Amendment implications.

As explained above (pp. 11-12, *supra*), there is no basis for plaintiffs' contention that their speech will be chilled because of fears that they might be charged with aiding and abetting a hate crime.  Unless plaintiffs specifically intend to facilitate the commission of a violent offense prohibited by the Act, they have no plausible fear of prosecution.  Their claim that their speech may be chilled for this reason "is simply too speculative a hypothesis to support" their claim. *Mitchell*, 508 U.S. at 488-489; see *Washington State Grange*, 552 U.S. at 450 (in addressing a facial challenge, a court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases").

Plaintiffs also err in contending that the Hate Crimes Act is "unconstitutionally vague * * * in violation of the First Amendment."  Complaint ¶ 104.  At the outset, we note that

-23-

vagueness is a Due Process, not a First Amendment, doctrine. See *United States* v. *Williams*, 128 S. Ct. 1830, 1845 (2008). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Ibid.* (citing *Grayned* v. *City of Rockford*, 408 U.S. 104, 108-109 (1972); *Hill* v. *Colorado*, 530 U.S. 703, 732 (2000)). The Hate Crimes Act is sufficiently clear to avoid either ground for vagueness. First, there is no "indeterminacy" or "subjectiv[ity]" about the statutory terms describing the other elements of the offense. See *Williams*, 128 S. Ct. at 1846. No one needs to guess at the meaning of a prohibition on causing "bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempt[ing] to cause bodily injury to any person." 18 U.S.C. 249(a)(2). Nor is there anything vague about the prohibition of conduct undertaken "because of the actual or perceived * * * sexual orientation * * * of any person." *Ibid.* Whether a defendant acted with the requisite intent is a "clear question[] of fact. Whether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'" *Williams*, 128 S. Ct. at 1846. To be sure, prosecutions under any criminal statute may present close factual questions. But, as *Williams* explained, the problem of "close cases * * * is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Ibid.* Further, the statute's requirement that the offense be "willful" requires proof, beyond a reasonable doubt, that the defendant knew that his conduct was unlawful. *United States* v. *Carney*, 387 F.3d 436, 442 (6th Cir. 2004) (willfulness element requires proof that the defendant "understood the illegality of the pertinent charged conduct"); see *Village of Hoffman*

-24-

*Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

Finally, plaintiffs allege that the Shepard-Byrd Hate Crimes Act "has deterred, inhibited, and chilled the exercise of Plaintiffs' right to expressive association."  Complaint ¶ 107.  The Act, however, imposes absolutely no restrictions on association, let alone restrictions that might be constitutionally suspect.  Freedom of "expressive association" relates to associations for the purpose of engaging in those activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion protected under the Freedom of Speech Clause of the First Amendment.  *Roberts*, 468 U.S. at 618.  This right is not implicated by the proscriptions of the Hate Crimes Act, which, as explained above, merely proscribes willful, violent conduct, and does not limit protected speech, assembly, or association in any way.

B.      *The Shepard-Byrd Hate Crimes Act Does Not Violate The Free Exercise Clause Of The First Amendment*

The Shepard-Byrd Hate Crimes Act prohibits only violent conduct.  And violence is not protected by the Free Exercise Clause.  *American Life League, Inc*. v. *Reno*, 47 F.3d 642, 656 (4th Cir.) ("We do not think the Free Exercise Clause shields conduct violating a criminal law that protects people and property from physical harm."), cert. denied, 516 U.S. 809 (1995).  Plaintiffs do not contend that their religious beliefs require them to commit violent acts.  But even if they did, the Free Exercise Clause would not bar their prosecution for such acts or invalidate this statute.  "[T]he right of free exercise does not relieve an individual of the

-25-

obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Employment Div.* v. *Smith*, 494 U.S. 872, 879 (1990) (citation omitted); cf. *Rahman*, 189 F.3d at 117 ("The fact that [defendant's] speech or conduct was 'religious' does not immunize him from prosecution under generally-applicable criminal statutes."); *American Life League*, 47 F.3d at 654; *Cheffer* v. *Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995).

The Hate Crimes Act is a generally-applicable criminal law that is not directed at any religious practice or belief.  The Act prohibits bias-motivated violence without regard to religious motivation.  See *Smith*, 494 U.S. at 878-879.  Its purpose is to prohibit violent conduct, not to suppress religious beliefs.  Nothing in the Act limits the exercise or expression of religious beliefs.  And, contrary to plaintiffs' allegation, Complaint ¶ 111,  the Act does not target anyone because of his or her religious beliefs.  Like FACE, it "applies to anyone who violates its terms, regardless of ideology or message." *Norton*, 298 F.3d at 553.  Indeed, the Act prohibits not only violent conduct motivated by bias based on sexual orientation, but also conduct based on race, color, national origin, religion, gender, gender identity, and disability.  See 18 U.S.C. 249.  It prohibits such violent conduct whether the actor's motivation is religious or secular.  The Act does not "discriminate[] against some or all religious beliefs or regulate[] or prohibit[] conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520, 532 (1993).  It therefore does not violate the Free Exercise Clause.

Moreover, if there were any doubt, the Rules of Construction set forth in Section 4710(3)-(6) of the Act ensure that the Act may not be enforced in such a way as to violate the Free Exercise Clause.

-26-

C.    *The Shepard-Byrd Hate Crimes Act Does Not Violate Equal Protection*

Plaintiffs' Equal Protection claim simply misconstrues the statute.  The Act does not "target[] Plaintiffs for disfavored treatment on account of [their] religious viewpoint." Complaint ¶ 114.  The Act does not exempt lesbians and gay men or those who support gay rights from its prohibitions.  Complaint ¶ 115.  It does not create "special rights, protections, and recognition" for any class of individuals.  Complaint ¶ 116.  The Act prohibits willful, violent conduct against individuals because of their actual or perceived sexual orientation, among other characteristics.  Thus, it protects those who are physically attacked because of their heterosexuality as well as those who are physically attacked because they are gay or lesbian or bisexual.  Cf. *McDonald* v. *Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) (holding that 42 U.S.C. 1981 prohibits discrimination against whites as well as against African Americans).  The Act also prohibits willful, violent conduct against individuals based on their actual or perceived religion.  Thus, it protects plaintiffs, along with everyone else, from violent attacks based upon their religious views.  The Hate Crimes Act "applies to anyone who violates its terms, regardless of ideology or message." *Norton*, 298 F.3d at 553.  Congress undoubtedly had a rational basis for these prohibitions.  See *Mitchell*, 508 U.S. at 488 ("State's desire to redress these perceived harms [of bias-motivated crime] provides an adequate explanation for its penalty-enhancement provision over and above mere disagreement with offenders' beliefs or biases.").[5]

---

[5] Plaintiffs acknowledge that rational basis analysis is applicable here.  Complaint ¶¶ 116-117.

-27-

D.    *Enactment Of Section 249(a)(2) Of The Hate Crimes Act Was Authorized By The Commerce Clause*

Plaintiffs contend (Complaint ¶ 120) that the Hate Crimes Act is unconstitutional because its enactment was not authorized by the Commerce Clause.  Because plaintiffs are mounting a facial challenge to the Act, they can succeed on this claim only "by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications."  *Washington State Grange*, 552 U.S. at 449 (quoting *United States* v. *Salerno*, 481 U.S. 739, 745 (1987)); see *Sabri*, 541 U.S. at 604-605.

The Commerce Clause authorizes Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. Art. I, § 8.  Congress's Commerce power falls into three overlapping categories:

> First, Congress may regulate the use of the channels of interstate commerce.  * * * Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  * * * Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, * * * *i.e.*, those activities that substantially affect interstate commerce.

*United States* v. *Lopez*, 514 U.S. 549, 558-559 (1995); see *United States* v. *Page*, 167 F.3d 325 (6th Cir.) (en banc), cert. denied, 528 U.S. 1003 (1999).

Congress made specific findings about the nexus between hate crimes and interstate commerce (see pp. 5-6, *supra*), and it ensured that Section 249(a)(2) would be applied only to cases falling into one of the three *Lopez* categories by requiring proof of an interstate commerce element in every case.  See 18 U.S.C. 249(a)(2)(B).  The requirement that the prosecution prove at least one of these elements "ensure[s], through case-by-case inquiry," *Lopez*, 514 U.S. at 561,

-28-

that the prosecution "is in pursuance of Congress' power to regulate interstate commerce,"

*United States* v. *Morrison*, 529 U.S. 598, 613 (2000).[6]  The existence of the interstate commerce

elements is thus fatal to plaintiffs' claim that the Act is facially unconstitutional.

The interstate commerce elements in the statute are similar to those in other criminal

statutes and fit comfortably within Congress's Commerce power.  Thus, it is clear that

"circumstances exist under which the Act would be valid."  See *Washington State Grange*, 552

U.S. at 449 (citation omitted).   It is well established, for example, that "the transportation of

persons across state lines [is] a form of 'commerce.'"  *Camps Newfound/Owatonna, Inc.* v. *Town

of Harrison*, 520 U.S. 564, 573 (1997); *Caminetti* v. *United States*, 242 U.S. 470, 491 (1917).

Thus, Congress has the authority to prohibit interstate travel with the intent to commit domestic

violence.  *Page*, 167 F.3d at 334-335 (Moore, J., concurring); *id*. at 336 (Kennedy, J.,

dissenting); *id.* at 338 (Ryan, J., dissenting); see *Morrison*, 529 U.S. at 613 n.5 (noting that "[t]he

Courts of Appeals have uniformly upheld this criminal sanction as an appropriate exercise of

Congress' Commerce Clause authority").  It follows that Congress has the authority to prohibit

bias-motivated violence where the offense occurs "during the course of, or as the result of, the

travel of the defendant or the victim" either "across a State line or national border" or "using a

---

[6]  In *United States* v. *Corp*, 236 F.3d 325, 330-331 (6th Cir. 2001), abrogation recognized
on other grounds in *United States* v. *Bowers*, 594 F.3d 522, 523 (6th Cir. 2010), the Sixth Circuit
suggested that the presence of an interstate commerce element may not ensure the
constitutionality of a statute if the element itself is so insubstantial as to provide almost no
limitation at all.  *Corp* specifically declined, however, to rule that the statute at issue in that case
was facially unconstitutional.  236 F.3d at 332.  Instead, it concluded that interstate commerce
elements must be interpreted "as meaningful restrictions" and thus examined the interstate nexus
in the case before it to determine whether the statute was constitutionally applied.  *Ibid.*

-29-

channel, facility, or instrumentality of interstate or foreign commerce."  See 18 U.S.C.

249(a)(2)(B)(i).

Congress also has the authority to regulate and protect instrumentalities of commerce,

"even though the threat may come only from intrastate activities."  *United States* v. *McHenry*, 97

F.3d 125, 126-127 (6th Cir. 1996) (quoting *Lopez*, 514 U.S. at 558), cert. denied, 519 U.S. 1131

(1997).  Thus, Congress may prohibit the use of the instrumentalities of commerce to facilitate

the commission of an offense.  See *United States* v. *Weathers*, 169 F.3d 336, 341-342 (6th Cir.)

(upholding the application of the federal murder-for-hire statute, 18 U.S.C. 1958(a), where

defendant used a cellular telephone in the commission of the offense), cert. denied, 528 U.S. 838

(1999).[7]  It follows that Congress similarly has the authority to prohibit bias-motivated violence

where "the defendant uses a channel, facility, or instrumentality of interstate or foreign

commerce in connection with the" offense.  18 U.S.C. 249(a)(2)(B)(ii).

Congress has the authority to prohibit the possession of firearms that have traveled in

interstate commerce.  *United States* v. *Bass*, 404 U.S. 336 (1971); *Scarborough* v. *United States*,

431 U.S. 563 (1977); *United States* v. *Napier*, 233 F.3d 394, 400-402 (6th Cir. 2000).  Thus, it

may prohibit the use of firearms or incendiary devices that have moved in interstate commerce to

commit bias-motivated violence.  See 18 U.S.C. 249(a)(2)(B)(iii).

In addition, Congress has the authority to regulate activities that substantially affect

interstate commerce,  *Lopez*, 514 U.S. at 559; *Gonzales* v. *Raich*, 545 U.S. 1, 17 (2005).  Thus,

---

[7]  18 U.S.C. 1958(a) declares it unlawful, *inter alia*, "to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value."

-30-

Congress may prohibit violent conduct, such as robbery and extortion, that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce."  18 U.S.C. 1951(a); see *United States* v. *Green*, 350 U.S. 415, 416, 417, 420-421 (1956) (holding that application of Hobbs Act to attempt to extort payments from employer through threats of violence was consistent with Commerce Clause); *United States* v. *Baylor*, 517 F.3d 899, 900-903 (6th Cir.) (upholding application of Hobbs Act to robbery of a restaurant upon proof that offense had a *de minimis* effect on interstate commerce), cert. denied, 128 S. Ct. 2982 (2008).  It follows that Congress may prohibit bias-motivated violence where the offense "(I) interferes with commercial or other economic activity in which the victim is engaged at the time of the conduct; or (II) otherwise affects interstate or foreign commerce."  18 U.S.C. 249(a)(2)(B)(iv).  This element would be established, for example, if a defendant caused bodily injury by firebombing a gay bar that participates in the interstate market for goods and services.  Cf. *Baylor*, 517 F.3d at 901-903; *United States* v. *Rayborn*, 312 F.3d 229 (6th Cir. 2002) (holding that church had sufficient nexus to interstate commerce to satisfy the interstate commerce element of the federal arson statute, 18 U.S.C. 844(i), which requires that the building be used in an activity affecting interstate commerce).

Because proof of one of these interstate commerce elements in every case will ensure that the prosecution "is in pursuance of Congress' power to regulate interstate commerce," *Morrison*, 529 U.S. at 613, plaintiffs' facial challenge must be rejected.

E.     *Enactment Of The Hate Crimes Act Did Not Violate The Tenth Amendment*

The Tenth Amendment provides:  "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the

-31-

people."  Plaintiffs contend that the Hate Crimes Act violates the Tenth Amendment because the

power to enact it "was 'not delegated' to Congress by the United States Constitution."

Complaint ¶ 124.  As explained in Part II.D., *supra*, however, the Act is well within Congress's

legislative authority under the Commerce Clause.  The Act therefore does not violate the Tenth

Amendment.  "If a power is delegated to Congress in the Constitution, the Tenth Amendment

expressly disclaims any reservation of that power to the States."  *New York* v. *United States*, 505

U.S. 144, 155 (1992).

Congress addressed federalism concerns in the Act by requiring proof of an interstate

commerce element in every prosecution under 18 U.S.C. 249(a)(2), and by requiring the Attorney

General or his designee to certify, before a case is brought under the Act, that:  "(A) the State

does not have jurisdiction; (B) the State has requested that the Federal Government assume

jurisdiction; (C) the verdict or sentence obtained pursuant to State charges left demonstratively

unvindicated the Federal interest in eradicating bias-motivated violence; or (D) a prosecution by

the United States is in the public interest and necessary to secure substantial justice."  18 U.S.C.

249(b).

-32-

## CONCLUSION

Plaintiffs' complaint should be dismissed for lack of jurisdiction.  In the alternative, plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted because the Shepard-Byrd Hate Crimes Act does not violate the First Amendment, the Equal Protection Clause of the Fifth Amendment, the Commerce Clause, or the Tenth Amendment.

Respectfully submitted,

BARBARA McQUADE                            THOMAS E. PEREZ
United States Attorney                           Assistant Attorney General

TONY WEST
Assistant Attorney General

___ s/ Judith E. Levy _____             __ s/ Linda F. Thome _____
JUDITH E. LEVY                                 JESSICA DUNSAY SILVER
Assistant United States Attorney           LINDA F. THOME
Eastern District of Michigan                  Department of Justice
211 W. Fort Street, Ste. 2001               Civil Rights Division
Detroit, MI 48226                               Appellate Section
(313) 226-9727                                  P.O. Box 14403
judith.levy@usdoj.gov                          Ben Franklin Station
P55882                                           Washington, D.C. 20044-4403
                                                    Telephone:  (202) 514-4706
JOHN R. GRIFFITHS                           Facsimile:  (202 514-8490
Deputy Branch Director                       linda.thome@usdoj.gov
                                                    Attorneys for the Defendant
___ s/Eric J.Beane _____
ERIC J. BEANE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 616-2035
Fascimile: (202) 616-8470
eric.beane@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on April 15, 2010, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

THOMAS MORE LAW CENTER
Robert J. Muise, Esq. (P62849)
Richard Thompson, Esq. (P21410)
Keith Corbett, Esq. (P24602)


I further certify that I have mailed by U.S. mail the paper to the following non-ECF

participants:

None


 s/ JUDITH E. LEVY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
Phone:  (313) 226-9727
E-mail: judith.levy@usdoj.gov
P55882